

**NUMBER 13-14-00465-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ABELINO HERNANDEZ,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

**On appeal from the 24th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Abelino Hernandez, guilty of the offense of aggravated robbery, a first degree felony, and sentenced him to thirty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. *See* TEX. PENAL CODE ANN. § 29.03(a)(3)(A) (West, Westlaw through Ch. 46 2015 R.S.). By one issue, Hernandez contends that the trial court erred in failing to

exclude evidence that he claims was unfairly prejudicial under Texas Rule of Evidence 403. We affirm.

## I.   BACKGROUND[1]

On March 2, 2013, shortly after midnight, a man armed with a knife entered a convenience store demanding that the cashier open the cash register. The man concealed his identity by pulling his shirt over his head. When the cashier was not able to open the cash register, the man attempted to pry it open with his knife but cut himself in the process, leaving his blood-stained knife at the crime scene before absconding. Through a subsequent investigation, the police determined that the blood found at the crime scene belonged to Hernandez. The State then charged him with aggravated robbery.

At trial, the State called Holly Jedlicka, a crime scene supervisor, who testified about her attempt to identify the perpetrator of the crime through fingerprint evidence. Jedlicka testified that the police collected fingerprints at the crime scene and compared them to fingerprints stored in a database called the Automated Fingerprint Identification System (AFIS). Jedlicka further testified that the AFIS database stores the fingerprints of state employees and arrestees from "any jail facility." Hernandez objected to this testimony. The trial court overruled Hernandez's objection. After the trial court overruled Hernandez's objection, Jedlicka testified that the fingerprints collected at the crime scene did not match any of the fingerprints stored in the AFIS database.

## II.   DISCUSSION

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

**A. Rule 403**

By his sole issue, Hernandez contends that the trial court erred in admitting Jedlicka's testimony concerning the AFIS database under Texas Rule of Evidence 403. Specifically, Hernandez asserts that the probative value of Jedlicka's testimony was substantially outweighed by the danger of unfair prejudice because it conveyed to the jury that he had been previously arrested. However, the entirety of Hernandez's trial objection to Jedlicka's testimony was as follows: "Your Honor, I object that we have crossed the line into the jury thinking the [finger]prints that exist—." Although the trial court overruled this objection, Hernandez never referenced rule 403 or elaborated on the basis for his objection.

In order for a complaint to be preserved for review on appeal, the complaining party must make the specific objection at trial and obtain a ruling on it. *See* TEX. R. APP. 33.1(a)(1)-(2); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Hernandez failed to preserve his rule 403 complaint because he did not object on that ground. *See* TEX. R. APP. 33.1(a)(1); *see also Goodwin v. State*, No. 13-12-00035-CR, 2012 WL 3590723, at *1 (Tex. App.—Corpus Christi Aug. 20, 2012, no pet.) (mem. op., not designated for publication) (providing that a rule 403 objection must be made at trial in order to raise such a complaint on appeal).

Even had Hernandez preserved his rule 403 complaint for appeal, the trial court's ruling was proper. We apply an abuse of discretion standard to determine whether a trial court erred in admitting evidence under rule 403. *Trevino v. State*, 228 S.W.3d 729, 734 (Tex. App.—Corpus Christi 2006, pet. ref'd). A trial court does not abuse its discretion unless "its decision is so clearly wrong as to lie

3

outside that zone within which reasonable persons might disagree." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). Texas Rule of Evidence 403 gives the trial court discretion to exclude "relevant evidence if its probative value is substantially outweighed by a danger of. . . unfair prejudice[.]" *See* TEX. R. EVID. 403. When making this determination, we consider the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). We now turn to a consideration of these factors.

Here, Jedlicka's testimony about the AFIS database was not particularly probative; it only showed that the AFIS database stored the fingerprints of arrestees and state employees, and that the person who left the fingerprints at the crime scene could not be identified through that database. Because this evidence did not implicate Hernandez or rule him out as a suspect, it was not necessary to show a fact of any consequence in proving that Hernandez committed the charged offense. Although not particularly probative, the parties agree that the time needed to develop this evidence was minimal. Nevertheless, Hernandez argues that this evidence carried a great potential to impress the jury in an irrational, yet indelible way because it conveyed that he had been previously arrested. However, the record does not support Hernandez's argument. Jedlicka never testified that Hernandez had been previously arrested; nor did she testify that Hernandez's fingerprint profile was stored in the AFIS database. Instead, she testified that the

4

fingerprints collected at the crime scene were run through the AFIS database for a match and that no match was found.[2]  Read in context, this evidence indicated to the jury that whoever left the fingerprints at the crime scene had no arrest history.

Notwithstanding this view of the record, Hernandez appears to argue that the mere use of the AFIS database to identify the perpetrator suggested to the jury that Hernandez's profile was already in the database, and that the power of this suggestion carried the potential to impress the jury in some irrational way. However, we agree with the State that, if the use of the AFIS database suggested a preexisting profile attributable to Hernandez, its potential to impress the jury in some irrational way was greatly weakened by the fact that the database also stored the fingerprints of state employees.  *See Montgomery*, 810 S.W.2d at 391; *Mata v. State*, No. 05-05-00504-CR, 2007 WL 882439, at *6 (Tex. App.—Dallas Mar. 26, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that testimony about the presence of appellant's DNA profile on a database that stored the DNA profiles of both government employees and criminals did not carry the potential to impress the jury in an irrational manner).

Weighing the *Erazo* factors, we cannot conclude that the trial court's decision to admit the evidence under rule 403 was "so clearly wrong as to lie outside that zone within which reasonable persons might disagree."  *See Trevino*,

---

[2] Specifically, Jedlicka testified as follows:

Q:     Okay. Mrs. Jedlicka, when the fingerprints collected in this case were run through AFIS, were there any matches?

A.     It—no. There was not any match at all.

228 S.W.3d at 734 (citing *Montgomery*, 810 S.W.2d at 391); *Erazo*, 144 S.W.3d at 489; *see also* TEX. R. EVID. 403.

## B. Harm Analysis

Even if we were to assume that Jedlicka's testimony improperly suggested Hernandez's arrest history to the jury and that the trial court erred in admitting that evidence, the error was harmless. The erroneous admission of evidence under rule 403 is non-constitutional error. *See Ketchum v. State*, 199 S.W. 3d 581, 593 (Tex. App.—Corpus Christi 2006, pet. ref'd). In reviewing the impact of non-constitutional error, we may not grant Hernandez a new trial if, after examining the record as a whole, we are fairly assured that the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). In making this determination, we may consider "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider closing arguments, evidence of the defendant's guilt, and the jury instructions. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002); *Morales*, 32 S.W.3d at 867.

First, concerning the evidence of guilt, Hernandez's identity as the robber was established by the DNA evidence that he left behind at the crime scene. The cashier testified at trial that the robber accidentally cut himself with his knife before he absconded, leaving his blood-stained knife at the crime scene. A forensic

scientist then tested the blood on the robber's knife and determined that it belonged to Hernandez. *See Motilla*, 78 S.W.3d at 357.

Second, concerning the nature of the error itself, we observe that Jedlicka's description of the AFIS database was brief, general, and non-inflammatory in the sense that the jury heard no details concerning any arrest—or whether it resulted in conviction, acquittal, or dismissal—beyond the mere fact that the databased stored the fingerprints of arrestees. *See id.* at 355. Furthermore, as previously noted, the database also contained the fingerprints of non-arrestees, including state employees; thus, Hernandez's jury was free to believe that, if his fingerprints were in the AFIS database, it was because he had been employed by the state rather than arrested.

Third, the trial court's charge instructed the jury that "[a]ll persons are presumed to be innocent," thereby eliminating any potential that the alleged suggestion of Hernandez's prior arrest history influenced the jury's verdict. *See id.* Finally, during closing argument, the State made no mention of the AFIS database and did not emphasize the alleged error. *See id.* After reviewing the record as a whole, we are fairly assured that the error, if any, did not have a substantial and injurious effect or influence in determining the jury's verdict. *See West v. State*, 169 S.W.3d 275, 281 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that the trial court's error in permitting the State to ask the defendant whether he had been arrested "more than twenty times" did not have a substantial or injurious effect on the jury's verdict when (1) the evidence of defendant's guilt was substantial, (2) the State asked only one question concerning his arrests and did not dwell on the

7

issue, (3) the court's charge instructed the jury to presume his innocence, and (4) the State's closing argument told the jury about two prior convictions but did not address any other prior arrests); *see also Casey*, 215 S.W.3d at 885. We therefore overrule Hernandez's sole issue.

### III.    CONCLUSION

We affirm the judgment of the trial court.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.